**Tiffany CORTES, Plaintiff–Appellee,**

v.

**MAXUS EXPLORATION COMPANY, Defendant–Appellant.**

**No. 91–2536.**

United States Court of Appeals, Fifth Circuit.

Nov. 18, 1992.

Michael V. Powell, Cynthia Keely Timms, Locke, Purnell, Rain, Harrell, Dallas, Tex., for defendant-appellant.

John R. Craddock, Dennis Herlong, Glickman & Barnett, Houston, Tex., for plaintiff-appellee.

Before JONES and WIENER, Circuit Judges and LITTLE, District Judge.*

LITTLE, District Judge:

Tiffany Cortes brought suit against her former employer, Maxus Exploration Company (formerly known as Diamond Shamrock Exploration Company), asserting a claim of sexual harassment under Title VII and a claim for duress under Texas law.

* District Judge of the Western District of Louisi-

The district court, sitting with an advisory jury, found that Cortes had been sexually harassed and constructively discharged and awarded her back pay damages of $97,-857.70 plus interest and attorney's fees. The jury, which was advisory as to the Title VII claim only, found that Maxus also had committed the tort of duress with malice and awarded $20,000 actual damages and $30,000 punitive damages. Cortes elected to have judgment entered on the Title VII claim. Maxus asserts on appeal that the district court's findings of sexual harassment and constructive discharge are erroneous as a matter of law or clearly erroneous, that the district court erroneously imposed liability based on time-barred acts of sexual harassment, and that the district court's award of back pay damages is clearly erroneous or erroneous as a matter of law. It also challenges the district court's decision to exclude as evidence the EEOC's determination that Cortes' claim was wanting in substance and did not merit further action by that agency. Further, Maxus contends that the district court erred in denying Maxus' motion to dismiss and its motion for directed verdict dismissing the duress claim. Finally, Maxus suggests that the jury's finding of duress and award of damages for duress are not supported by the evidence. We affirm the district court's judgment in all respects. The judgment does not include recovery for the duress claim. Consequently, we do not address Maxus' challenge to the jury's verdict and award on the duress claim.

I.

Maxus hired Cortes in 1980 as a drafting technician in Houston, Texas. Shortly thereafter, Cortes' immediate supervisor, Edgar Acero, began propositioning Cortes seeking sexual favors. Acero repeatedly asked Cortes to have sexual relations with him, sometimes threatening to demote or fire her if she refused. He made lewd remarks about her body, told her vulgar jokes on a daily basis, showed her pornographic photographs, asked her to come to his house for "training" after work hours,

ana, sitting by designation.

bragged about the size of his penis, and frequently brushed up against her legs and breasts. Cortes complained to management and was promised an investigation. After this complaint, Acero demoted Cortes from Assistant Supervisor and replaced her with a person of less experience. When no investigation occurred, Cortes complained a second time. The Human Resources manager told Cortes that he did not believe her and that she was exposing herself to liability for slander. Cortes then went immediately to the Senior Manager and was again promised an investigation. When Cortes returned to her office, Acero docked her pay for that day. Acero then began requiring that Cortes ask his permission to leave the office, even to go to the restroom. Whenever she asked to go to the restroom, Acero would follow her and wait in the hall until she returned. Finally, in August 1982, Cortes was transferred to the petroleum engineering department. Acero was never investigated or disciplined.

In 1983, Cortes was assigned to work under Acero temporarily. Although he was no longer Cortes' supervisor, Acero was authorized to bring work to Cortes, which gave him the opportunity to renew his sexual advances and offensive jokes. In May 1985, Cortes complained to Maxus' new Human Resources manager, Ed Morgan. He told her to imagine that Acero's advances and jokes were nothing more than little pink elephants and that when he snapped his fingers, she should forget them. When Cortes again complained to Morgan, he began snapping his fingers.

In March 1986, Maxus reorganized its Houston operations and substantially reduced its labor force. Maxus informed Cortes that she was being returned to the drafting department where Acero would be her immediate supervisor. Within six days she had to elect the transfer or resign. On 18 March 1986, the date on which she was to start working under Acero, Cortes telephoned Ed Morgan and recorded the conversations on tape. She told Morgan that she was afraid to work for Acero because he had continued to harass her sexually. Morgan replied that Cortes' problem with Acero was not Maxus' problem. He said

that there was nothing he could do. Her request for additional time to decide her employment future was denied. She asked if she could be laid off with the other employees so that she could collect benefits until she could find another job. Morgan told her that she could not be laid off because Maxus had a job for her. If she could not accept the position, then it would be considered a resignation, not a lay off. When pushed to give a definite answer, Cortes told Morgan that although she needed and wanted the work, she could not subject herself to Acero another time.

Cortes immediately filed an EEOC claim of discrimination alleging sexual harassment. More than one year later, the EEOC issued a determination and right to sue letter, concluding that no reasonable cause existed to believe that unlawful discrimination had occurred.

## II.

The appellant Maxus first challenges the district court's findings that Maxus sexually harassed and constructively discharged Cortes in March 1986 when it informed her that she had been transferred to the drafting department under the immediate supervision of Acero.

### a. *Sexual Harassment*

 We review the district court's finding of sexual harassment under the clearly erroneous standard. *Wilson v. Zapata Offshore Co.*, 939 F.2d 260, 273 (5th Cir.1991). Maxus argues that the finding of sexual harassment is clearly erroneous because Maxus' 1986 act of placing Cortes under the supervision of Acero was not itself of a sexual nature—because Ed Morgan, in informing Cortes that she must accept the transfer or resign, made no sexual advances or requests for sexual favors. We disagree. "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). In this circuit, a claim for hostile work environment re-

quires the plaintiff to prove five factors: (1) membership in a protected group; (2) subjection to unprovoked sexual advances, or request for sexual favors, or other verbal or physical conduct of a sexual nature; (3) but for her sex, the plaintiff would not have been the object of harassment; (4) the harassment was sufficiently pervasive to alter the conditions of employment and create an abusive or hostile working environment; (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *See Jones v. Flagship Int'l*, 793 F.2d 714, 710–20 (5th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). Even in light of the strong evidence that Acero had sexually harassed Cortes when she was under his supervision and that when given the opportunity, he had continued to do so even after she was transferred out of his department, Maxus transferred Cortes to this sexually abusive environment. When Cortes expressed her fears about accepting the transfer, Maxus refused to take any remedial measures to protect her.[1] The district court found that these acts created an abusive work environment for Cortes and subjected her to unwelcome sexual advances, requests for sexual favors, and other unprovoked verbal and physical conduct of a sexual nature. We find no clear error in the district court's conclusion that these acts amounted to sexual harassment within the meaning of Title VII.

■ Maxus further asserts, however, that the finding of sexual harassment is clearly erroneous because the predicate acts of 1980–82 did not occur within the Title VII statute of limitations period. Apparently, it is the appellant's contention that the district court imposed liability for the sexual harassment occurring in 1980–82, not the appellant's 1986 act of transferring Cortes to a sexually abusive environment. This argument is unfounded. Although much of the evidence presented at trial regarded the harassment that occurred in 1980–82, the district court's written findings of fact and conclusions of law state unequivocally that the finding of sexual harassment was based on the 1986 actions, not the 1980–82 harassment. Moreover, the district court properly considered evidence of the 1980–82 fear-producing actions in determining whether the 1986 actions amounted to sexual harassment and constructive discharge. *See Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th Cir.), *reh'g denied*, 656 F.2d 704 (5th Cir.1981) (time-barred acts of discrimination were considered relevant to the issue of constructive discharge); *Fisher v. Procter & Gamble Mfg. Co.*, 613 F.2d 527,

---

1. During the telephone conversations between Morgan and Cortes, which Cortes recorded, Morgan stated several times that management would do nothing:

> CORTES: Ed, if you were my supervisor, I would love to go to work there. But if Edgar Acero is going to be my supervisor, I—if—that's what I just cannot accept. That's what I just cannot put in my mind, that he—that whatever he has done to me, I didn't—
>
> MORGAN: Okay. That is—*but you have to understand that I cannot do anything about that.*
>
> CORTES: Can Steve do anything about that?
>
> MORGAN: No. What could Steve do? What—do you—what would you want me to do?
>
> CORTES: I don't want Edgar [Acero] as my supervisor. I don't want to quit my job because I—I like the company...., but I just cannot work with Edgar [Acero].
>
> MORGAN: We like you. Edgar Acero is the drafting supervisor for the southern division. You are a drafting technician in the southern division. Therefore, you work for Edgar. Now, if you're telling me that you cannot work for Edgar, I don't—you're—you're telling me that you're quitting. That's what you're telling me....
>
> CORTES: Just to be—I feel like I [sic] been thrown out of the company this way.
>
> MORGAN: No, no, you have not. It's a circumstance situation. It's not something that—he had—*you and Edgar [Acero] simply cannot get along. That's not Diamond Shamrock's [Maxus'] problem.*
>
> CORTES: No, it's not that we cannot get along. It's that I've been harassed.
>
> MORGAN: You cannot—
>
> CORTES: He—
>
> MORGAN: —get along. *It's not Diamond Shamrock's [Maxus'] problem.*
>
> ....
>
> CORTES: .... I well I just don't understand why Steve or—or you or whoever's in charge cannot understand the situation I was in.
>
> MORGAN: But that's not the point. We have a job to get done.

540 (5th Cir.), *reh'g denied*, 618 F.2d 1389 (5th Cir.1980), *cert. denied*, 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981) (time-barred acts ruled admissible to show current conduct); *Crawford v. Western Elec. Co.*, 614 F.2d 1300, 1314 (5th Cir.), *reh'g denied*, 620 F.2d 300 (5th Cir.1980) (time-barred conduct deemed relevant to show current discriminatory practices). In *Downey*, we noted that " '[w]hile some or most of this evidence may concern time-barred conduct, it is relevant, . . . and may be used . . . to illuminate current practices which, viewed in isolation, may not indicate discriminatory motives.' " *Id.* at 305 (quoting *Crawford*, 614 F.2d at 1314). The Supreme Court has likewise recognized that, although time-barred acts themselves can create no present legal consequences, they "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). We find that the district court did not erroneously impose liability for time-barred acts. Nor did it err in considering evidence of those acts. Consequently, we need not decide whether the statute of limitations period was tolled by equitable estoppel or whether Maxus' employment practices amounted to a continuing violation under Title VII.

### b. *Constructive Discharge*

■ Before addressing the constructive discharge question, we must determine the appropriate standard of review. The appellant argues that we should treat the district court's finding of constructive discharge as a mixed question of law and fact to be reviewed de novo. We disagree. In the past, this court has expressed uncertainty over whether the constructive discharge issue should be treated as one of fact, and thus subject to the clearly erroneous standard, or as a mixed question of law and fact subject to de novo review. *See*

*Jett v. Dallas Independent School Dist.*, 798 F.2d 748, 755 n. 5 (5th Cir.1986), *aff'd in part and remanded in part*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Kelleher v. Flawn*, 761 F.2d 1079, 1086 (5th Cir.1985); *Shawgo v. Spradlin*, 701 F.2d 470, 482 n. 14 (5th Cir.), *cert. denied*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 345 (1983); *Junior v. Texaco, Inc.*, 688 F.2d 377, 379–80 (5th Cir.1982). Recently, however, we have applied the clearly erroneous standard to the issue. *See Landgraf v. USI Film Products*, 968 F.2d 427, 430 (5th Cir.1992). Several other circuits have done the same. *See, e.g., Hirschfeld v. New Mexico Corrections Dep't*, 916 F.2d 572, 580 (10th Cir.1990); *Wardwell v. School Bd.*, 786 F.2d 1554, 1557 (11th Cir.1986); *Maney v. Brinkley Mun. Waterworks & Sewer Dep't*, 802 F.2d 1073, 1076 (8th Cir. 1986); *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 888–89 (3d Cir.1984).[2] We apply the standard of review that we applied in *Landgraf*. We are bound to do so. Accordingly, we review the district court's determination that Cortes was constructively discharged as a finding of fact under the clearly erroneous rule. Fed.R.Civ.Proc. 52(a).

■ In order to establish constructive discharge, the plaintiff must prove that " 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429 (5th Cir.1992) (quoting *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir.1980)). Maxus argues that a reasonable person in Cortes' situation would not have felt compelled to resign but instead, would have accepted the transfer and then demanded a response from Maxus if Acero continued the harassment. However, when Cortes expressed her fears about returning to the abusive environment, she was told that it was not management's problem.[3] Moreover, Cortes' previous complaints of

---

**2.** Only the Sixth Circuit has expressly disagreed. *See Yates v. Avco Corp.*, 819 F.2d 630, 636 (6th Cir.1987). *But see Bruhwiler v. University of Tennessee*, 859 F.2d 419, 421 (6th Cir.1988);

*Kreis v. Charles O. Townley, M.D. & Assoc.*, 833 F.2d 74, 81 (6th Cir.1987).

**3.** *See* Transcript of telephone conversation, *supra* note 1.

harassment were answered with (1) unfulfilled promises of investigation; (2) a demotion; (3) advice that a slander suit could follow her complaints; and (4) an observation that the harassment was like a pink elephant—both would vanish with the snap of a finger. Acero was never bridled, let alone disciplined. The district court did not clearly err in finding that a reasonable person in Cortes' shoes would have felt compelled to resign.

## III.

Maxus next asserts that the district court erred in excluding as evidence the EEOC's determination of no probable cause regarding Cortes' charge of sex discrimination against Maxus. The district court granted Cortes' motion in limine to exclude the EEOC determination under Federal Rule of Evidence 403 on grounds that its probative value was outweighed by its possible prejudicial effect. *Cortes v. Maxus Exploration Co.*, 758 F.Supp. 1182 (S.D.Tex.1991). We review the district court's decision to exclude the report for abuse of discretion. *Koonce v. Quaker Safety Prods. & Mfg. Co.*, 798 F.2d 700, 720 (5th Cir.1986).

Maxus argues that Cortes failed to meet her burden of proving that the determination was untrustworthy and therefore not admissible under Federal Rule of Evidence 803(8)(C). The appellant confuses the test for admissibility under Rule 803(8) with that for excluding otherwise admissible evidence under Rule 403. Under Rule 803(8)(C), investigative reports made by government agencies are removed from the rule against hearsay unless circumstances indicate untrustworthiness. Fed.R.Evid.

803(8)(C). Because of this presumption that agency reports are not to be excluded under the hearsay rule, this court has held that the party opposing the admission of the report under Rule 803(8)(C) must prove the report's untrustworthiness. *See Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir.1991); *see also Garcia v. Gloor*, 618 F.2d 264, 272 (5th Cir.), *reh'g denied*, 625 F.2d 1016 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). The appellee, however, did not object to the EEOC determination's admissibility under 803(8)(C), but rather, asked the court to exclude the determination under the balancing test of Rule 403.

Rule 403 gives trial courts the discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. This court, on several occasions, has found investigative reports and files of the EEOC to be highly probative. *See, e.g., McClure v. Mexia Independent School Dist.*, 750 F.2d 396 (5th Cir.), *reh'g denied*, 755 F.2d 173 (5th Cir.1985); *Peters v. Jefferson Chemical Co.*, 516 F.2d 447, 450 (5th Cir. 1975); *Smith v. Universal Services, Inc.*, 454 F.2d 154, 157 (5th Cir.1972). We also warned in *Moss v. Ole South Real Estate, Inc.*, 933 F.2d at 1308–09, that the balancing test of Rule 403 should not be misused in such a way that "would end the presumption that evaluative reports are admissible hearsay under Rule 803(8)(C)." [4] *Id.* at 1308. None of these decisions should be read as leaving district courts without discretion under Rule 403 to exclude such

---

4. In *Moss,* we addressed the exclusion of HUD and Air Force reports under both 803(8)(C) and 403. *Id.* at 1305–12. The magistrate in that case had excluded the reports under 403 on grounds that they would so confuse the jury that their probative value would be substantially outweighed by the resulting confusion. The magistrate reasoned that the report would confuse the issues because the credibility of the agency investigators would be attacked:

> The agencies who investigated the incident are not parties to the present litigation nor are their procedures on trial. Clearly, this is a

significant reason to exclude all the reports in question so as to avoid such problems and ensure the jury remains focused on the merits of the case.

*Id.* at 1308. We concluded that the magistrate's approach "would gut the admissibility of evaluative reports under Rule 803(8)(C) because his analysis would be true for all evaluative reports." *Id.* The agencies who prepare such reports are seldom parties to the case and the competence of investigators is always subject to attack. Thus, we found that the magistrate abused his discretion in excluding the reports.

reports if their probative value is substantially outweighed by prejudicial effect or other considerations enumerated in the rule.

■ Maxus charges that the district court misread a portion of the EEOC determination to mean that Cortes was never interviewed in connection with her EEOC claim. In its tentative determination, the EEOC stated that Cortes did not act as a witness during the course of "the investigation." Maxus argues that "the investigation" to which the EEOC refers is the earlier investigation of a claim regarding Acero filed by one of Cortes' female coemployees, not the investigation of Cortes' claim. Nothing else in the determination indicates that Cortes was interviewed in connection with her own claim. The placement of the paragraph in the EEOC determination suggests that Maxus is correct. Even so, we will reverse an evidentiary ruling only where the district court has clearly abused its discretion and a substantial right of a party is affected. *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 277 (5th Cir.1991). Even if the inference was erroneous, it was not the only basis for the district court's decision. The court found the determination to consist of "bare conclusions" with little, if any, probative value. The documents contain only a few factual findings and most of these regard a retaliation charge, which Cortes withdrew before trial. With regard to Cortes' sex discrimination charge, the documents essentially state that other employees were discharged or involuntarily transferred in early 1986 and that no probable cause existed to believe that Cortes' transfer constituted sex discrimination or constructive discharge. The district court concluded that, unlike the detailed evidentiary statements and findings of fact found by this court to be highly probative, this conclusory determination would unfairly prejudice the appel-

lee's case. We cannot say that this amounted to abuse of discretion.

## IV.

■ The appellant further asserts that the district court erred in awarding back pay. We review the district court's award under the clearly erroneous standard. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424, 95 S.Ct. 2362, 2374–75, 45 L.Ed.2d 280 (1975). First, Maxus argues that the award is erroneous because Cortes was not constructively discharged. Because we find no error in the district court's finding of constructive discharge, this argument must fall. Award of back pay is proper where the employee is constructively discharged. *See, e.g., Jurgens v. EEOC,* 903 F.2d 386, 389–90 (5th Cir. 1990). But Maxus also argues that even if it did constructively discharge Cortes, the back pay award is clearly erroneous because Maxus had eliminated Cortes' job in the petroleum engineering department. As we understand it, the appellant's contention is that it should not be liable for back pay because if it had not constructively discharged Cortes by placing her under the supervision of a known sexual harasser, then she would have been laid off anyway. We disagree. In light of the district court's finding of constructive discharge, the appellant's assertion that it would have laid off Cortes if it had not retained her under the sexually harassing circumstances is immaterial to the back pay award. It is irrelevant whether Maxus eliminated Cortes' former position as part of its reorganization plan or whether others were laid off as a result of the plan. The determinative factor is that Maxus did not lay off Cortes when it eliminated her former position in the petroleum engineering department. In fact, Maxus refused Cortes' request that she be laid off with the other employees whose positions had been eliminated rather than be forced to work under Acero.[5] Instead, Maxus retained Cortes as

---

5. During Cortes' telephone conversation with Ed Morgan on 18 March 1986, Cortes repeatedly asked that she be laid off rather than forced to resign:

> CORTES: Ed, I think I—I've been put in a very tough situation here with—with this—I

have been put in really, really in a bad situation because everybody knows and Steve knows what was my problem with Edgar. I've been harassed by him. I'm sexually harassed by him, and *I just don't understand*

an employee. The conditions of this continued employment created a sexually harassing environment for Cortes, which the appellant did not attempt to remedy. Under these circumstances, the district court found that Cortes was constructively discharged and therefore entitled to recover back pay. The award is not clearly erroneous. We express no opinion as to whether the back pay award would have been proper if Cortes had been offered the transfer as an alternative to being laid off for entirely nondiscriminatory reasons. Such a scenario would be very different from the one before us today, for it would not involve a constructive discharge.

### V.

Maxus also asserts that the district court erred in denying Maxus' motion to dismiss Cortes' duress claim and denying Maxus' motion for directed verdict dismissing the same claim and that the jury's verdict and damages award on the duress claim are not supported by the evidence. Upon examination, we notice that the district court's judgment does not include any recovery for the duress claim. Cortes elected to have

judgment entered on the Title VII claims only. Thus, because we affirm the district court's judgment in all respects, we need not address Maxus' challenges to the jury's verdict and award on the duress claim.

The judgment of the district court is AFFIRMED.

---

*why I cannot be laid off then. I—I understand there is going to be a layoff there.*
MORGAN: Okay. I know you—do you wish to see Steve when you come back? Because he's not going to be here next week. And, you know—and that'll be another week. And I can't—we can't afford to wait that long.
CORTES: *Ed, but I can't be laid off then?*
MORGAN: Pardon?
CORTES: Or—or—or I am supposed to resign if I do not have the position?
MORGAN: It will be a resignation because you're telling me it won't work in the job that I asked you to work.
. . . .
CORTES: Well, I'm not telling you that I'm quitting. *I am asking you to put me in the—in the—the people that are going to be laid off. Just—okay. You are closing my position because there's no job there, right? So, I just don't understand why I'm not with the other 600 people that are going to be laid off.*
MORGAN: Because that decision hasn't been made yet. Those people have not been designated yet.
CORTES: So, why I was the first one to be picked up—to be moved around?
. . . .
MORGAN: . . . . Let me—and—and the—all that I'm gonna look into is—is—is—what the question you asked me about layoff. *I don't*

*see it as that, because I'm not laying you off. I want you to work with Edgar [Acero].*
CORTES: Ed, Because—
MORGAN: You are telling me you can't work. Therefore, you are resigning.
CORTES: Ed, because—because you that I go out—I have to—*I have to have something to help myself some money. At least—I have to collect before I find another job.*
. . . .
MORGAN: I don't know. All I know is that I've asked you to try again; and you've said, "No." So, let me see what I can come up with.
CORTES: Okay.
MORGAN: And—and relative to some sort of separation package, or—or something. I—I don't know. I'm going to have to investigate you. *I don't consider this—I don't consider this a layoff. I consider it a resignation.*
. . . .
CORTES: Okay. Let me call you in the afternoon then. Okay?
. . . .
MORGAN: Okay. *Because if you don't come to work, you understand that that's a resignation.*
CORTES: *Ed. I cannot be laid off?*
MORGAN: *You cannot be laid off. We have a job for you.*